THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RAYMOND BANKS, Defendant-Appellant.

First District (4th Division)   No. 77-1229

Opinion filed August 17, 1978.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan S. Cherry, and Bryan B. Lavine, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County, after a jury trial, convicting the defendant, Raymond Banks, of murder and multiple counts of attempt armed robbery, attempt murder and aggravated battery. He was sentenced to one term of imprisonment of 75 to 100 years in the State penitentiary for murder, and to seven concurrent terms of imprisonment of 6 to 18 years for the other offenses, with no sentence imposed for aggravated battery. From these convictions the defendant appeals.

The issues presented for review are (1) whether the trial court erred in denying the defendant's motion to suppress identification testimony, (2) whether the defendant was proven guilty beyond a reasonable doubt, and (3) whether the convictions for aggravated battery must be vacated because of the lack of sentencing thereon.

The defendant was charged by indictment for the murder of Juan Hilario; the attempt murder of Amando Pagan and Artemio Ortiz; the attempt armed robbery of Juan Hilario, Amando Pagan, Artemio Ortiz, Luis Gonzalez, Marcos Portalatin and Aueraldo Acevedo and the aggravated battery of Amando Pagan and Artemio Ortiz. The defendant entered a plea of not guilty. After a hearing on a motion to suppress identifications, the jury trial commenced on April 18, 1977. The People withdrew the counts charging the defendant with the attempt armed robbery of Marcos Portalatin and the aggravated battery charges alleging great bodily harm to Amando Pagan and Artemio Ortiz. The jury found the defendant guilty on all remaining counts. The court sentenced the defendant to 75 to 100 years in the Illinois State Penitentiary for murder and to seven terms of 6 to 18 years for the attempt murder of Amando Pagan and Artemio Ortiz and the attempt armed robbery of Juan Hilario, Artemio Ortiz, Amando Pagan, Luis Gonzalez and Aueraldo Acevedo. The sentences are to run concurrently.

On December 3, 1976, the defendant filed a motion to suppress identification. The defendant maintained the in-court and out-of-court identifications were the product of suggestive procedures. The defendant also maintained there was no independent basis for an in-court identification of the defendant. A hearing on the motion was commenced on April 11, 1977, and testimony was taken.

On March 3, 1976, after finishing work, Amando Pagan and Artemio

Ortiz went to the Conales Club Tavern at 2525 West Division Street, in Chicago. About 10 minutes after arriving, they heard the front door open and observed a man walk into the tavern. Mr. Pagan testified he looked at the man's face, and nothing was blocking his view of the man. When the man walked behind Mr. Pagan, he pulled Mr. Pagan away from the bar stool and pushed him forward into the bar, so Mr. Pagan ended up in a "catcher's position" on the floor. When Mr. Pagan was in the "catcher's position" he turned and was able to see a gun in the man's right hand.

After this altercation, the man walked past Mr. Pagan and fired a shot toward the west wall of the tavern. After the first shot was fired, the man said "Nobody move; this is a hold-up." At that time, Juan Hilario, who had previously been sitting at a table at the end of the bar playing dominos, stood up. When he stood up, the man who had just previously entered the tavern shot him.

Amando Pagan stated when the man shot Hilario, he could see the side of the man's face. The shooter then started to run sideways toward the front door. When the man reached the front door, he fired at Mr. Pagan and Mr. Ortiz, wounding them both. Mr. Pagan stated he saw the man's face for about two to four minutes.

Artemio Ortiz testified he was in the tavern on the night the shooting occurred, and testified further to substantially the same facts as Mr. Pagan.

After the shooting, Mr. Ortiz told the police the man weighed about 167 pounds and was about five foot seven. He told the police the man was wearing a dark brown jacket and appeared to be about 25 to 30 years old. Mr. Pagan described the man's height as five foot eight to five foot nine and his weight as 170 to 180 pounds.

Investigator Steven Barnas of the Chicago Police Department testified he was assigned to investigate the death of Juan Hilario. At about 7:30 p.m. to 8 p.m. on April 21, 1975, investigator Barnas interviewed Mrs. Banks, the defendant's mother. Mrs. Banks gave investigator Barnas the defendant's address and a small photograph depicting the defendant with another person. Investigator Barnas took the photograph of the defendant and proceeded to the Conales Club Tavern.

When investigator Barnas arrived at the tavern, he showed it to Artemio Ortiz. Mr. Ortiz said it resembled the man who had done the shooting. Investigator Barnas also showed the photo to Mr. Acevedo while at the tavern. He said "It looks like the man."

On April 22, 1975, investigator Barnas went to Amando Pagan's house for the purpose of showing him the photo. Mr. Pagan said the photo resembled the man.

Chicago Police Officer Thomas O'Connor testified he was assigned to investigate the death of Juan Hilario. Officer O'Connor stated he had been

apprised of the results of an earlier investigation and was informed of a possible identification of a suspect. He also learned a photograph of the defendant was at Area Four Homicide. At that time, Officer O'Connor was given five or six photos of the defendant, from which he picked one to show witnesses. He also selected four or five photos depicting other people, for viewing with the photo of the defendant. After obtaining these photos Officer O'Connor went to see Mr. Pagan and Mr. Ortiz. Mr. Pagan viewed five or six photos, one of which was of the defendant, and singled out the defendant as the man whom he saw enter the tavern and fire the shots. Officer O'Connor also showed the photos to Mr. Ortiz, who identified the defendant's photo as depicting the man who did the shooting.

Amando Pagan and Artemio Ortiz both testified they viewed some photos and identified the defendant's photo as the man from the tavern who did the shooting.

On May 22, 1975, a lineup was conducted at the Cook County Jail. Officer Barnas requested Mr. Ortiz and Mr. Pagan to view the lineup, explained the procedure for the lineup and stated each person viewed the lineup separately.

From this lineup, Mr. Pagan and Mr. Ortiz both testified they identified the defendant as the man who did the shooting.

Arguments were heard and the defendant sought to quash the arrest warrant and suppress any subsequent identification of the defendant. The court denied the defendant's motion to suppress and stated there was a factual basis for an independent identification of the defendant. After the jury was selected, trial commenced on April 18, 1977.

At the trial, Amando Pagan and Artemio Ortiz testified in substantially the same manner as they testified during the hearing on the defendant's motion to suppress, and in substantially the same manner as each other.

The People were then permitted to nolle pros the count charging the aggravated battery of Mr. Pagan and Mr. Ortiz because the evidence did not show any great bodily harm. The court heard closing arguments and the jury returned verdicts of guilty in all remaining counts. The court then entered judgment on the verdicts.

After a hearing in aggravation and mitigation, the court sentenced the defendant to 75 to 100 years in the Illinois State Penitentiary on the charge of murder, and seven terms of 6 to 18 years for the attempt armed robbery of Hilario, Ortiz, Pagan, Gonzalez and Acevedo and the attempt murder of Ortiz and Pagan.

The defendant claims the trial court erred in denying his motion to suppress identification testimony. More particularly the defendant argues the display of a single photo was unreliable, suggestive and should have been suppressed; the unpreserved multiple photo array was unnecessarily suggestive and should have been suppressed; the identification of the

defendant at the lineup was a product of the suggestiveness of the photo displays and should have been suppressed; and the in-court identification of the defendant was tainted by the out-of-court identification, lacked an independent basis for admission and should have been suppressed.

■■ Although this court agrees photographic identification of a defendant in a particular case should be closely examined with regard to suggestiveness, we hold photographic identification is a proper investigative device and, as such, the photos and the testimony as to the photo identification may be entered into evidence in the event suggestiveness is not shown.

In *Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967, the court commented on the problems inherent in photographic identification. Mr. Justice Harlan, speaking for the majority of the court, stated:

> "Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs." *Simmons v. United States*, 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253, 88 S. Ct. 967, 971.

Although the use of photographic identification is generally not prohibited by the courts, a question of the suggestiveness of such a procedure must be examined in each individual case.

■■ It has been established the suggestiveness of any identification procedure must be evaluated under the "totality of the circumstances." (*Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382.) The circumstances of the case at bar rendered the photographic identifications appropriate and not unduly suggestive. The trial court properly denied the defendant's motion to suppress the out-of-court identification of the defendant.

In a related issue, the defendant contends the in-court identification was tainted by the suggestive out-of-court identification and there was no independent basis for the admission of the in-court identification.

Although this court's finding the photo identification employed here was not suggestive, and it negates a premise of the defendant's argument that the in-court identification was tainted by the suggestiveness of the photo identifications, we choose to briefly discuss the question further.

Illinois courts have made it clear, whenever an in-court identification had its origin independent of the pretrial identification, the in-court identification is permissible, even if the pretrial confrontation was tainted by suggestiveness. *People v. Connolly* (1973), 55 Ill. 2d 421, 303 N.E.2d 409; *People v. Patrick* (1972), 53 Ill. 2d 201, 290 N.E.2d 227.

■■ The record in the case at bar reveals the adequacy of the lighting

conditions inside the tavern, the close proximity of the defendant to the identifying witnesses, the 1½- to 4-minute time period in which the assailant remained inside the tavern, and the fact the assailant made no attempt to conceal his face. The in-court identification of the defendant by Amando Pagan and Artemio Ortiz was positive, and even had the out-of-court identification procedures been suggestive the record amply reveals there was an independent origin for the in-court identification. The trial court properly refused to suppress the identification testimony.

The defendant additionally claims his identity as the assailant was not proven beyond a reasonable doubt.

The jury heard the testimony and chose to believe Amando Pagan and Artemio Ortiz, who identified the defendant as the assailant in the instant case. The law is well settled in Illinois, the weight of the evidence and the credibility of the witnesses are matters for the trier of fact. *People v. Harris* (1972), 53 Ill. 2d 83, 288 N.E.2d 873.

■■ The record, including the testimony of Mr. Pagan and Mr. Ortiz, clearly establishes the identity of the defendant as the assailant was proven beyond a reasonable doubt.

Because of an improper instruction with regard to the defendant's attempt murder convictions of Mr. Pagan and Mr. Ortiz, the People have confessed error was manifest, and agree such convictions should be vacated.

■■ At the sentencing of the defendant the trial judge did not enter sentence on the verdicts for aggravated battery because they are lesser included offenses of attempt murder. Since the attempt murder convictions are hereby vacated, this cause is remanded to the circuit court for purposes of sentencing on the defendant's aggravated battery convictions. Although the defendant urges this court to remand the cause and to order the circuit court to vacate his aggravated battery conviction due to the absence of sentence, we are authorized to remand the cause for sentencing (see *People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540), and we find it proper to remand the cause for sentencing.

For the foregoing reasons the judgment of the circuit court of Cook County convicting the defendant of murder is affirmed; convicting the defendant of attempt robbery is affirmed; convicting the defendant of aggravated battery is affirmed; convicting the defendant of attempt murder is hereby vacated; and the cause is remanded to the circuit court for sentencing on the aggravated battery convictions.

Affirmed in part; vacated in part; and remanded for sentencing.

JOHNSON, P. J., and ROMITI, J., concur.