(No. 62815

(No. 63179

(No. 63352.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RAYMOND BANKS, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. BOOKER T. BLAKES, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RICHARD DuQUAINE, Appellee.

*Opinion filed November 23, 1987.—Rehearing denied April 5, 1988.*

CUNNINGHAM, J., took no part.

CLARK, C.J., and WARD, RYAN and MILLER, JJ., specially concurring.

SIMON, J., dissenting.

Raymond Banks, appellant *pro se*, and Theodore A. Gottfried, State Appellate Defender, and Patrick J. Hughes, Jr., both of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Thomas V. Gainer, Jr., and Bonnie Meyer Sloan, Assistant State's Attorneys, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Frank W. Ralph, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Mark L. Rotert and Arleen C. Anderson, Assistant Attorneys General, of Chicago, of counsel), for the People.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Joan S. Cherry, Paula Carstensen, Bonnie Meyer Sloan, and Thomas V. Gainer, Jr., Assistant

State's Attorneys, of counsel), for the People.

Steven Clark, Deputy Defender, and Deborah Liebow, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE MORAN delivered the opinion of the court:

In People v. Banks, No. 62815, the defendant was convicted in the circuit court of Cook County of murder and multiple counts of attempted murder, attempted armed robbery and aggravated battery. On appeal, defendant was represented by the Cook County public defender's office. The appellate court reversed defendant's attempted murder convictions but affirmed his conviction on all other charges. (63 Ill. App. 3d 891.) Defendant later filed a *pro se* petition for post-conviction review under the Post-Conviction Hearing Act (the Act) (Ill. Rev. Stat. 1981, ch. 38, par. 122—1 *et seq.*), alleging ineffective assistance of appellate counsel and requesting appointment of counsel other than the public defender. That request was denied and the trial court appointed an assistant Cook County public defender to represent the defendant. Thereafter, the court denied defendant's request for an evidentiary hearing and granted the State's motion to dismiss. Defendant appealed arguing that the trial court erred in appointing an assistant public defender to represent him in post-conviction proceedings where his petition alleged that an assistant public defender from the same office rendered ineffective assistance on direct appeal. The appellate court affirmed the trial court in an unpublished order. 137 Ill. App. 3d 1152.

In People v. Blakes, No. 63179, the defendant was convicted in the circuit court of Peoria County of unlawful use of weapons. Prior to closing arguments, the defendant informed the trial court that he did not be-

lieve that the assistant public defender assigned to his case was affording him adequate representation. At defendant's request, the trial court discharged defense counsel and appointed another assistant Peoria County public defender to represent defendant in post-trial proceedings. Defendant then filed a motion for a new trial, alleging that trial counsel rendered ineffective assistance. On appeal, defendant argued that post-trial counsel had a conflict of interest because he asserted the incompetency of another assistant public defender from the same office. The appellate court held that no conflict of interest existed since the Peoria County public defender's office is decentralized and the assistant public defenders work part-time under contract. 131 Ill. App. 3d 1004.

In People v. DuQuaine, No. 63352, the defendant was convicted of murder in the circuit court of Cook County. The Cook County public defender represented the defendant on appeal, and the appellate court affirmed in an unpublished order. Defendant subsequently filed a *pro se* petition for post-conviction relief, alleging ineffective assistance of appellate counsel. The Cook County public defender was appointed to represent defendant in post-conviction proceedings, and the trial court granted the State's motion to dismiss without an evidentiary hearing. In an unpublished order, the appellate court reversed the dismissal, finding that the trial court should have appointed counsel from outside the Cook County public defender's office. (143 Ill. App. 3d 1158.) In each cause, appeal is taken pursuant to Rule 315. 107 Ill. 2d R. 315.

A single issue is common to these consolidated cases: whether a defendant is entitled to appointment of counsel other than the public defender where the defendant challenges the effectiveness of assistance rendered by an attorney from the same public defender's office.

Defendants argue that a *per se* conflict of interest exists where an assistant public defender asserts that the defendant was previously rendered ineffective assistance by another assistant public defender from the same office. Under these circumstances, defendants reason, the public defender labors under conflicting loyalties: loyalty towards his client versus loyalty towards his office. Citing *People v. Smith* (1967), 37 Ill. 2d 622, defendants maintain that this court has long held that such a situation creates a *per se* conflict of interest. The State initially responds that *Smith* did not create a *per se* conflict of interest rule as it was limited to the facts in that case. Moreover, the State contends, even if *Smith* is read as establishing a *per se* conflict of interest rule it has been overruled by our later holdings. The State, citing *People v. Robinson* (1979), 79 Ill. 2d 147, argues that a case-by-case examination is mandated in order to determine whether an actual conflict of interest exists.

In *People v. Smith* (1967), 37 Ill. 2d 622, the defendant was represented at trial by an assistant public defender and later the defendant filed a *pro se* petition under the Act, charging trial counsel with ineffective assistance. Upon the filing of defendant's petition, the trial court appointed another assistant public defender from the same office to represent defendant in post-conviction proceedings. The defendant then moved for appointment of counsel other than the public defender, but the trial court denied the motion. This court reversed and remanded for a new hearing with appointed counsel other than the public defender finding that a conflict of interest exists where an assistant public defender asserts the incompetence of another assistant public defender from the same office. In *People v. Terry* (1970), 46 Ill. 2d 75, the court followed the holding in *Smith*. *Terry* involved a defendant who alleged in a post-conviction petition that he was ineffectively represented by an assistant

public defender at the time of his pleading guilty. The court, quoting *Smith*, held that counsel other than the public defender should have been appointed to represent the defendant in post-conviction proceedings.

Our subsequent cases, however, evidence our understanding of the special nature of public defender's offices where conflicts of interest are concerned. Public defender's offices, we have recognized, are unlike private law firms for purposes of conflicts of interest. While a conflict of interest among any member of a private law firm will disqualify the entire firm (*People v. Stoval* (1968), 40 Ill. 2d 109), the disqualification of an assistant public defender will not necessarily disqualify all members of that office (*People v. Robinson* (1979), 79 Ill. 2d 147). In *Robinson* it was urged that where an assistant public defender is disqualified by reason of a conflict of interest then all other assistants in that office should be *per se* disqualified since these other assistants' loyalty to their office would conflict with their loyalty to their clients. The court rejected this contention, reasoning that any such loyalty to one's office was too remote to justify a *per se* conflict of interest rule. Referring to *Robinson*, the court in *People v. Lewis* (1981), 88 Ill. 2d 429, 438, stated that "we did not deem a personal allegiance or loyalty to the public defender's office sufficient to justify a rule that if one attorney employed by such an office were disqualified by reason of a conflict of interest, no other attorney employed by that office could undertake the representation." After rejecting a *per se* rule, the *Robinson* court prescribed a case-by-case inquiry designed to determine whether the facts of a particular case indicate an actual conflict and therefore preclude representation. This rule announced in *Robinson* has been reaffirmed in the subsequent holdings of the court. *People v. Miller* (1980), 79 Ill. 2d 454, 461 ("the disqualification of one assistant public defender due to a conflict

of interest will not necessarily disqualify all members of the public defender's office"); *People v. Walton* (1979), 78 Ill. 2d 197 (no *per se* conflict where a public defender alleges that his predecessor in office rendered ineffective assistance); *People v. Coates* (1985), 109 Ill. 2d 431, 438-39 (no *per se* conflict where the public defender's office represented the defendant and the State's principal witness in an unrelated matter, rather, "a case-by-case examination is necessary to determine whether any facts peculiar to the case preclude the representation of the individuals whose interests were allegedly in conflict").

We agree with the defendants that *Robinson* did not directly overrule *Smith*. *Robinson* only decided that where an assistant public defender faces a conflict of interest, the conflict will not *per se* disqualify other members of the office, whereas *Smith* decided that a *per se* conflict exists where an assistant asserts the incompetency of another member of the office since he must confront competing loyalties towards his client and towards his office. However, *Robinson* rejected the essential premise in *Smith* that an assistant public defender feels a strong loyalty to protect the reputation of his office. That is, *Smith* adopts a *per se* conflicts rule premised on the view that an assistant public defender's loyalty towards his office is so great that where he asserts the incompetency of another assistant, a conflict must necessarily be imputed to him; whereas *Robinson* rejected a *per se* conflicts rule precisely because it finds that an assistant public defender's loyalty towards his office is not great enough to impute to him the conflicts of other assistants. As such, *Robinson* reflects our appreciation that a public defender does not necessarily owe an allegiance to the reputation of his office such as to interfere with his undivided loyalty towards his client. *Robinson* evidences our concern that any such *per se* rule would

needlessly disqualify competent and able members of the public defender's office.

Defendants nevertheless maintain that here a public defender's loyalty towards the reputation of his office is of such magnitude that a *per se* conflict of interest rule should apply whenever an assistant public defender asserts the incompetency of another assistant. We disagree. To begin, it is not clear to us that where an assistant public defender asserts the incompetency of another assistant, the reputation of the whole office is negatively impacted. To the contrary, it can be equally argued that a positive image is fostered where an office aggressively pursues allegations made against some of its members. More importantly, however, a *per se* rule would require us to presume that public defenders would allow any office allegiances to interfere with their foremost obligation to their clients. In our view, it is erroneous to assume that public defenders have such an allegiance and are unable to subordinate it to the interests of their clients. Though referring to a different type of conflict, the commentary to the American Bar Association Standards Relating to the Defense Function (ABA Standards, Conflict of Interest §3.5 (1970)) is instructive:

> "The basic rule which must guide every lawyer is that his total loyalty is due each client in each case; and he may never permit the pressing of one point or one case to be guided or influenced by the demands of another case. The risk of jeopardizing other cases, if it in fact exists, presents a conflict he must resolve in such a way that his immediate responsibility is faithfully discharged. This problem is one of the arguments frequently made against the desirability of a full-time defender agency. Those who have studied voluntary and public defender offices have concluded that the inbred adversary tendencies of the lawyer are sufficient protection." ABA Standards, The Defense Function, Commentary, at 212-13 (1970).

We therefore hold that where an assistant public defender asserts that another assistant from the same office has rendered ineffective assistance, a case-by-case inquiry should be conducted to determine whether any circumstances peculiar to the case indicate the presence of an actual conflict of interest; accordingly, we overrule this court's prior holdings in *Smith* and *Terry*. Here, defendants have not indicated, and our examination of the record does not reveal, circumstances which suggest that actual conflicts of interest were present.

Lastly, defendant Banks contends that he was nonetheless ineffectively represented because post-conviction counsel failed to investigate the existence of alleged alibi witnesses. However, this point will not be considered as it was not raised in the appellate court and is therefore waived. *People v. Caldwell* (1968), 39 Ill. 2d 346, 354.

For the foregoing reasons, the judgments of the appellate court in Nos. 62815 and 63179 are affirmed; in No. 63352 we reverse the appellate court and affirm the order of the trial court.

> *62815 — Judgment affirmed.*
> *63179 — Judgment affirmed.*
> *63352 — Appellate court reversed;*
> *circuit court affirmed.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.

CHIEF JUSTICE CLARK, specially concurring:

I concur in the decision and judgment of the majority, and write separately only to address Justice Simon's dissenting opinion.

The dissent argues that *People v. Robinson* (1979), 79 Ill. 2d 147, neither conflicts with *People v. Smith* (1967), 37 Ill. 2d 622, nor does it "provide[ ] a reliable guideline for the cases now before us, for it involved a different

kind of conflict." (121 Ill. 2d at 50 (Simon, J., dissenting).) In so arguing the dissent maintains that the conflicts presented in *Robinson* were *"per se"* or *"imputed,"* whereas the conflicts considered by the court in *Smith* and *Terry* were actual. I disagree with the dissent's assertion that the conflicts in *Smith* and *Terry* were actual rather than *"per se,"* and find the dissent's interpretation of the interrelationship between *Smith* and *Robinson* simply erroneous. I suggest that, in order for the dissent to have reached its conclusion, the dissent has distorted the definitions of *"per se"* and actual conflicts of interest in an effort to find *Robinson* inapplicable to the instant case.

A review of this court's decisions involving attorney conflicts of interest reveals a clear distinction between *"per se"* and actual conflicts. Where a rule of *"per se"* conflict has been adopted, allegations of prejudice and proof of prejudice are unnecessary. (See *People v. Fife* (1979), 76 Ill. 2d 418; *People v. Coslet* (1977), 67 Ill. 2d 127; *People v. Stoval* (1968), 40 Ill. 2d 109.) In each of these instances, the conflict itself vitiated any requirement that evidence be presented to demonstrate that prejudice did occur. On the other hand, "[w]here a *'per se'* conflict of interest is not established, it is the defendant's burden to show an actual conflict of interest and to demonstrate prejudice." (*People v. Free* (1986), 112 Ill. 2d 154, 169; see also *People v. Miller* (1980), 79 Ill. 2d 454.) To demonstrate prejudice does not mean that a defendant has to prove the allegations of ineffectiveness of counsel; rather, the defendant must demonstrate that he would be prejudiced by the denial of his request for the appointment of private counsel.

As the majority correctly notes, the court in *People v. Smith* (1967), 37 Ill. 2d 622, adopted a rule of *"per se"* violation in cases where an assistant public defender asserts the incompetency of another assistant public de-

fender from the same office. In so holding, the *Smith* court accordingly refused to consider the merits of defendant's petition because, *on its face*, the defendant's mere conclusory allegation of ineffective assistance of counsel *automatically* entitled defendant to counsel other than the public defender. The defendant there was not required to prove an actual conflict of interest, *i.e.*, that the new public defender could not adequately represent him. Clearly, the dissent's assertion here that *Smith* involved an actual conflict rather than a *"per se"* conflict is simply wrong. The dissent has obviously misinterpreted the holding in *Smith*.

Throughout the years, this court has steadily retreated from the harsh consequences resulting from the *Smith* decision. Beginning with *Robinson*, the court has repeatedly held that disqualification of one assistant public defender due to a conflict of interest will not necessarily disqualify all members of the public defender's office. (See, *e.g., People v. Miller* (1980), 79 Ill. 2d 454; *People v. Walton* (1979), 78 Ill. 2d 197.) Today's decision is a natural and logical extension of *Robinson*, which requires that the decision in *Smith* no longer be followed.

The court's decision today does nothing to emasculate the fundamental principle that "[t]he right to the effective assistance of counsel is a fundamental right and entitles the person represented to the undivided loyalty of counsel." (*People v. Stoval* (1968), 40 Ill. 2d 109, 111.) Our decision merely lays to rest any notion that a defendant has an *automatic* right to nonpublic defender counsel simply by making a bare allegation of ineffectiveness of counsel in a post-conviction petition. The mere *likelihood* of a conflict is no longer determinative; the defendant must set forth in his petition sufficient facts to demonstrate the existence of an actual conflict to be entitled to alternative counsel. In the absence of an evidentiary record of conflict, one should not be created

based on mere speculation. See *People v. Berland* (1978), 74 Ill. 2d 286, 301.

Furthermore, the appointment of outside counsel every time there is a bare allegation of ineffectiveness on the part of the public defender's office could invite claims of incompetency of counsel by petitioners who, for reasons only self-serving, want counsel other than from the public defender's office. Such a *per se* rule would provide defendants with a vehicle for obtaining a "second bite of the apple," believing that if they have non-public defender counsel, their convictions could possibly be reversed. As Justice Webber wisely observed in his dissent in *People v. Walton* (1978), 66 Ill. App. 3d 913, 916:

> "That rule [*"per se"* conflict of interest rule enunciated in *Smith*], unless carefully controlled, will become nothing less than a Declaration of Indulgences to every criminal defendant who is dissatisfied with the result of his trial and appeal and seeks to fasten the blame upon his lawyer."

The dissent further argues that the majority's decision in this case will create problems for the lower courts because we fail to offer further guidance regarding the rule that a "case by case inquiry should be conducted to determine whether any circumstances peculiar to the case indicate the presence of an actual conflict of interest." (*People v. Robinson* (1979), 79 Ill. 2d 147.) The dissent's argument is erroneous. The very nature of a "case by case" inquiry dictates against the imposition of fixed standards in determining the presence of an actual conflict. Further, the dissent fails to recognize that the court in *Robinson* specifically held that "the decisions of the Supreme Court and this court (see *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173; *People v. Stoval* (1968), 40 Ill. 2d

109; *People v. Kester* (1977), 66 Ill. 2d 162; *People v. Berland* (1978), 74 Ill. 2d 286; *People v. Vriner* (1978), 74 Ill. 2d 329) furnish guidance adequate to avoid conflicts of interest which will impede the furnishing of effective assistance of counsel." *Robinson*, 79 Ill. 2d at 159-60.

In the instant case, defendants' *pro se* petitions assert nothing more than "ineffective assistance of counsel," without providing any factual basis to support such an allegation. The dissent is critical of the majority's failure to make any determination as to the existence of any actual conflict in this case. Again, the dissent's argument is erroneous. Obviously, without the existence of a factual basis to support defendants' assertion of incompetency, we cannot determine whether there is even a likelihood of any conflict under these circumstances.

The underlying innuendo in the dissent's argument is that loyalty to one's office is more important than loyalty to one's client. I respectfully suggest that my colleague's thinking is out of step not only with the established view of this court (see *People v. Robinson* (1979), 79 Ill. 2d 147), but with what appears to be the established view of the United States Supreme Court as well. For example, in *Branti v. Finkel* (1980), 445 U.S. 507, 519, 63 L. Ed. 2d 574, 584, 100 S. Ct. 1287, 1295, the Supreme Court stated that "[t]he primary, *if not the only,* responsibility of an assistant public defender is to represent individual citizens in controversy with the State." (Emphasis added.) The majority in *Branti* cited with approval its earlier statement in *Ferri v. Ackerman* (1979), 444 U.S. 193, 204, 62 L. Ed. 2d 355, 363, 100 S. Ct. 402, 409, wherein the Court, in commenting on the duties of counsel appointed to represent indigent defendants in Federal criminal proceedings, stated:

"His principal responsibility is to serve the undivided interests of his client. Indeed, an indispensable element of

the effective performance of his responsibilities is the ability to act *independently of the Government and to oppose it* in adversary litigation." (Emphasis added.)

The dissent in effect suggests that an assistant public defender is primarily interested in keeping his job by staying in the good graces of his superiors, and thus is only incidentally concerned with providing his client with the most effective representation possible. This flawed logic serves to undercut the integrity and dedicated efforts of the many fine members of the public defender offices throughout this State. I suggest that the dissent has underestimated the extent of the professional and personal commitment made by these outstanding public servants in their quest to provide indigent defendants with the most effective representation possible.

For these reasons I concur in the judgment of the court.

WARD, RYAN and MILLER, JJ., join in this special concurrence.

JUSTICE SIMON, dissenting:

I dissent because *People v. Smith* (1967), 37 Ill. 2d 622, and *People v. Terry* (1970), 46 Ill. 2d 75, were correctly decided and should not be overruled. Unlike the majority's opinion, those decisions reinforced the Illinois courts' long adhered-to mandate that "[t]he right to the effective assistance of counsel is a fundamental right and entitles the person represented to the undivided loyalty of counsel." *People v. Stoval* (1968), 40 Ill. 2d 109, 111.

In *People v. Smith* (1967), 37 Ill. 2d 622, the defendant filed a *pro se* petition for a hearing under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1981, ch. 38, par. 122—1 *et seq.*) alleging that he was represented by incompetent counsel from the public defender's office, and the trial court then appointed the public defender's office

to represent the defendant upon his petition. *Smith* held that counsel other than the public defender should have been appointed; its reasoning remains persuasive:

"This circumstance clearly confronts the public defender's office with a conflict of interest since, on one hand, its natural inclination would be to protect its reputation by defending against the charges of incompetency while, on the other hand, its duty as an advocate is to aid petitioner in establishing the veracity of these charges." (37 Ill. 2d at 624.)

The majority concedes that *Terry* reaffirmed *Smith* (121 Ill. 2d at 40), yet fails to explain why it is no longer true that "circumstances such as these create a conflict of interest" (*People v. Terry* (1970), 46 Ill. 2d 75, 78).

Instead, the majority strains to find a conflict between the court's decisions in *People v. Robinson* (1979), 79 Ill. 2d 147, and *Smith* and *Terry*. But *Robinson* neither conflicts with *Smith* nor provides a reliable guideline for the cases now before us, for it involved a different kind of conflict. The distinction between conflicts that are attributed to attorneys because of the conflicts of fellow public defenders and what are referred to here as actual conflicts, those which directly affect individual attorneys, is crucial and must be drawn. The concern in *Robinson* was over imputed conflicts, not the actual conflicts which existed in *Smith* and *Terry*. More specifically, *Robinson* dealt with the question whether the principle now set forth in Supreme Court Rule 5—105(d) (107 Ill. 2d R. 5—105(d)) applied to public defender's offices. (*People v. Robinson* (1979), 79 Ill. 2d 147, 154.) The *Robinson* court simply decided that the principles motivating imputed disqualification rules did not require *per se* disqualification of attorneys in a public defender's office. Due to the special nature of public defender's offices, *Robinson* held that *per se* conflicts would not prevent assistant public defenders in the same office from representing clients with antago-

nistic interests. *People v. Miller* (1980), 79 Ill. 2d 454, 461 ("disqualification of one assistant public defender due to a conflict of interest will not necessarily disqualify all members of the public defender's office").

The majority acknowledges the narrow holdings of *Robinson* and *Smith* in these words:

> "*Robinson* only decided that where an assistant public defender faces a conflict of interest, the conflict will not *per se* disqualify other members of the office, whereas *Smith* decided that a *per se* conflict exists where an assistant asserts the incompetency of another member of the office since he must confront competing loyalties towards his client and towards his office." (121 Ill. 2d at 42.)

Notwithstanding its recognition that *Robinson* and *Smith* are not inconsistent, the majority, without citation, simply sweeps away *Smith* with the assertion that "*Robinson* rejected the essential premise in *Smith* that an assistant public defender feels a strong loyalty to protect the reputation of his office." (121 Ill. 2d at 42.) In fact, *Robinson* upheld the essential premise of *Smith*:

> "The People's conclusion that attorneys in the public defender's office have no allegiance to their office has been implicitly rejected in *People v. Smith* (1967), 37 Ill. 2d 622. In *Smith* the defendant had been represented at trial by an attorney from the public defender's office. After his conviction, the defendant filed a *pro se* petition alleging that his trial counsel was incompetent; another attorney from the same office was appointed to represent defendant in the post-conviction proceedings. Although the court restricted its holding to the circumstances present in that case, in finding a conflict of interest it was nonetheless acknowledged that an attorney from the public defender's office might feel some loyalty to the office since the attorney's 'natural inclination would be to protect its reputation by defending against the charges of incompetency ***.' 37 Ill. 2d 622, 624." (*People v. Robinson* (1979), 79 Ill. 2d 147, 158.)

Ignoring the true holding of *Robinson*, the majority proceeds to overrule *Smith* and *Terry* by rewriting *Robinson*, rather than by demonstrating why *stare decisis* and the reasoning of *Smith* do not control these cases.

Attempting to justify its new rule, the majority speculates that "a positive image is fostered where an office aggressively pursues allegations made against some of its members." (121 Ill. 2d at 43.) Whether or not this argument has any basis in fact, it is a speculation about a lawyer's motivation that relates only to conflicting loyalties to one's client and to the reputation of the public defender's office as a whole. Conspicuously absent is any discussion of the more powerful individual loyalties to one's colleagues; challenging the competence of one's office mate is hardly an easy assignment. Nor does the majority address the bureaucratic consequences that a public defender may fear if he zealously argues that another public defender—possibly his superior—is incompetent.

The opinion also points out that affirming the *per se* rule "would require us to presume that public defenders would allow any office allegiances to interfere with their foremost obligation to their clients." (121 Ill. 2d at 43.) Curiously, the majority does not appear to realize that this criticism pertains to all conflict of interest decisions. Conflict of interest rules require presumptions that certain situations inherently entail conflicting loyalties that interfere (or appear to interfere) with an attorney's client obligations. One advantage of a *per se* rule is that it eliminates the need to make case-by-case assessments of conflicting loyalties that may well be extremely subtle or subconscious. Previously, this court has noted that it is extremely difficult to measure such "subtle influences" and the "subliminal reluctance to attack pleadings *** by the prosecution which [an attorney] may have been

personally involved with." (*People v. Kester* (1977), 66 Ill. 2d 162, 167-68.) Here, however, the majority ignores the difficulties of gauging the effects of subtle or subliminal pressures that arise from friendship or loyalty to a lawyer's colleagues and conflict with his duty to his client.

Compounding the problems this decision will create for the lower courts, the majority fails to provide any guidance when it applies its rule that "a case-by-case inquiry should be conducted to determine whether any circumstances peculiar to the case indicate the presence of an actual conflict of interest." (121 Ill. 2d at 44.) Whether or not one labels them *per se*, the conflicts present in these cases are very real. (See *People v. Walton* (1979), 78 Ill. 2d 197, 200-01 (recognizing distinction between actual and *per se* conflicts of interest).) Nevertheless, the court's "case-by-case inquiry" here is satisfied in only one sentence: "Here, defendants have not indicated, and our examination of the record does not reveal, circumstances which suggest that actual conflicts of interest were present." (121 Ill. 2d at 44.) The court's "case-by-case inquiry," it appears, is but window dressing for a new *per se* rule that loyalty to the public defender's office or a lawyer's associates in it cannot form the basis of a conflict of interest.

In my view, if the majority genuinely intended to conduct any case-by-case analysis, it should have addressed the actual conflicts that the court recognized in *Smith* and *Terry*. The attorneys in each of the cases now before us faced very significant conflicts—their loyalty to their clients requiring them to impugn the competency of their own offices and, indirectly, themselves. By suggesting that other assistant public defenders were incompetent, the assistants in each of these cases might have faced hostility from their peers and supervisors, and by denigrating the abilities of assistant public defenders,

they prejudiced their own prospects for employment after leaving the public defender's office. With so many clashing loyalties, the actual conflicts in these cases are too real and powerful to be ignored.

Faced with similar situations, courts in other jurisdictions have found that the conflicts require disqualification of fellow public defenders. See *Hill v. State* (1978), 263 Ark. 478, 480, 566 S.W.2d 127, 127 (where one assistant public defender represents indigent alleging ineffective assistance by another assistant public defender, "a conflict of interest would inevitably arise"); *Adams v. State* (Fla. 1980), 380 So. 2d 421, 422 (the later public defender "has a hopeless conflict of interest"). Accord *Angarano v. United States* (D.C. 1974), 329 A.2d 453, 457; *Commonwealth v. Willis* (1981), 492 Pa. 310, 312, 424 A.2d 876, 877.

The conflicts present in these consolidated cases are not attenuated by the unique characteristics of either the Cook or Peoria County public defender's office. Though there are hundreds of assistants in the Cook County office, the sheer number does nothing to attenuate the actual conflict since Banks and DuQuaine were still asking their attorneys at the post-conviction proceedings to argue that their peers, and ultimately their supervisors and themselves, were second-rate lawyers in a second-rate office. The appellate court in Blakes' case found significance in the structure of the Peoria County office. There, the public defender contracts with private attorneys to act as his assistants and handle the public defender's assignments part-time. Questioning the competence of another assistant public defender in those circumstances would not only tarnish the abilities of all assistant public defenders working part-time in that county (including the assistant making the assertion), but might antagonize the public defender, who employs the private attorneys, and adversely affect the assignment of

future work to Blakes' attorney. Thus, the conflict facing the attorney in Blakes' case is no less real merely because the Peoria County public defender's office is decentralized and is staffed by practicing attorneys.

This dissent does not question the integrity and dedication of this State's public defenders. To the contrary, this dissent is based in large part on my desire to uphold the good reputation of public defenders by precluding even the appearance of conflicting loyalties. I remind my colleagues that appellate public defenders from several different offices in this State vigorously asserted in this court that the appellate court was wrong in Nos. 62815 and 63179, and right in No. 63352. Their strong arguments against the reasoning on which the disposition of this case is based lead me to observe that the public defenders in this State are acutely aware of the difficult position in which that disposition leaves them.

Because I believe that the conflicts in these cases are just as real today as those this court recognized in *Smith* two decades ago, I see no reason to discard that precedent. I would reverse and remand both No. 62815 and No. 63179, and I would affirm the judgment of the appellate court in No. 63352.