THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN HARTFIELD, Defendant-Appellant.

First District (2nd Division)   No. 1—91—1261

Opinion filed June 30, 1992.

Randolph N. Stone, Public Defender, of Chicago (Stephen L. Richards, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and Jeffery Wawrzyniak, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

In 1984, defendant John Hartfield was convicted of rape and aggravated battery; he was adjudged a habitual criminal and was sentenced to life imprisonment. After an unsuccessful appeal, defendant filed a post-conviction petition, alleging constitutional error due to the State's use of peremptory challenges to exclude blacks from the jury and his trial counsel's refusal to comply with his requests to object to this conduct. The circuit court dismissed the petition without an evidentiary hearing. For the reasons that follow, we affirm.

During the court's *voir dire* of the potential jurors, one of the prosecutors asked to approach the bench for an unspecified reason. The court then remarked:

"It's been brought to my attention I forgot two questions.

The first one is—as you can see, Mr. Hartfield is a black man. Some of you are white, but some of you are Oriental. Some of you are black.

The fact that Mr. Hartfield's race, would that, in anyway [*sic*], affect any of your ability to be fair and impartial? There's no—nobody who has given an affirmative response."

Jury selection took place in the judge's chambers. There is no record of the process, but the judge commented a short time later that the State exercised seven peremptory challenges.

After defendant's conviction in February 1984, he appealed on grounds not relevant here. The appellate court affirmed the judgment in October 1985. (*People v. Hartfield* (1985), 137 Ill. App. 3d 679, 484 N.E.2d 1136.) Defendant then filed a petition for leave to appeal, which the Illinois Supreme Court denied on February 5, 1986. The record contains no indication that defendant filed a petition for rehearing or that he petitioned the United States Supreme Court for a writ of *certiorari*.

On April 30, 1986, less than three months after the Illinois Supreme Court issued its ruling on defendant's appeal, the United States Supreme Court rendered its decision in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. In *Batson*, the Supreme Court held that a defendant may challenge, on equal protection grounds, a single instance of the State's use of peremptory challenges to reject venire members of the same race. In doing so, the Court overruled *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, which had required a defendant to establish case-by-case discrimination in order to prevail on an equal protection claim.

Defendant filed a *pro se* post-conviction petition in 1988. In this petition, he alleged that he was denied effective assistance of counsel in violation of the sixth amendment by his trial counsel's refusal to comply with his request that she object to the State's use of peremptory challenges to exclude blacks from the jury, and that he was denied a fair trial and equal protection by the State's use of its peremptory challenges to exclude black potential jurors.[1] In defendant's affidavit submitted with his petition, he claims that he "experienced the prosecutor exercise peremptory challenges to exclude black per-

---

[1] At the hearing, defendant's counsel stated that defendant filed an amendment to his petition, but only one version appears in the record. In addition, even though defendant's counsel stated "we stand on the *pro se* petition," the record contains an affidavit she submitted, with this case number but titled "Richard Harris v. People of the State of Illinois," stating that she had prepared a supplemental petition in accordance with Rule 651(c) (134 Ill. 2d R. 651(c)). No supplemental petition appears in the record. Defendant's counsel also stated that defendant "allege[d] ineffective assistance of appellate counsel in failing to raise the issue of the ineffective assistance of trial counsel." This allegation, however, does not appear in the version of his *pro se* petition in the record before us. Because there is no other mention in the record, or argument in defendant's briefs here, on the effectiveness of his appellate counsel, we do not address the matter here.

sons from [his] petit jury," such that "to [his] best recollection, the prosecutor so excluded nearly all the black [potential] jurors present and only one (1) black [potential] juror was allowed to participate in [his] jury trial as an alternate juror." Defendant also states as follows:

"I became outraged by the prosecutor's conduct of excluding nearly all the black jurors after my attorney informed me of the same. I then indicated to my attorney that it was apparent that the prosecutor wanted no black people to determine my fate. My attorney informed me that this type of conduct was a practice of the State's Attorney's Office of Cook County, Illinois. I stated to my attorney that this was obvious racism, and I asked her to object to the conduct. My attorney said that the law allowed the prosecutor to use his peremptory challenges any way he saw fit, and that there was nothing the defense could do about it."

Defendant's petition asked the court to vacate the judgment and to grant him a new trial.

On defendant's motion, the court appointed a public defender to represent him. The State moved for dismissal of the petition. The motion itself is not in the record, but according to the transcript of the hearing, the State argued that the *Batson* ruling was inapplicable given the dates of defendant's conviction and unsuccessful appeals. No argument was had on the sixth amendment claim. At the outset of the hearing on the State's motion, the court denied defense counsel's motion for leave to withdraw on the ground of conflict of interest. Without an evidentiary hearing, the court granted the motion to dismiss; it did not articulate its reasons.

I

Section 122—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*) states as follows:

"Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Illinois or both may institute a proceeding under this Article." (Ill. Rev. Stat. 1989, ch. 38, par. 122—1.)

The purpose of a post-conviction proceeding is to delve into constitutional phases of the original conviction which have not previously been determined. *People v. Owens* (1989), 129 Ill. 2d 303, 308, 544 N.E.2d 276, 277, *cert. denied* (1990), 497 U.S. 1032, 111 L. Ed. 2d 802, 110 S. Ct. 3294.

The standard of review for such proceedings is well settled:
"A Post-Conviction Hearing Act proceeding is not an appeal *per se*, but a collateral attack on a judgment. [Citation.] In order to prevail under the Act, the defendant must establish a substantial deprivation of his rights under the United States Constitution or the Constitution of Illinois. [Citation.] The defendant is not entitled to an evidentiary hearing unless the allegations of his petition, supported where appropriate by the trial record or by accompanying affidavits, make a substantial showing that the defendant's rights have been so violated. [Citation.] For the purpose of determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in any accompanying affidavits are to be taken as true. [Citations.]" (*People v. Caballero* (1989), 126 Ill. 2d 248, 258-59, 533 N.E.2d 1089, 1091.)
The decision to dismiss a petition without an evidentiary hearing is within the court's discretion (Ill. Rev. Stat. 1989, ch. 38, par. 122—6), and it will be reversed only on an abuse of that discretion. *People v. Mendez* (1991), 221 Ill. App. 3d 868, 871, 582 N.E.2d 1265, 1268, *appeal denied* (1992), 143 Ill. 2d 644, 587 N.E.2d 1021.

## II

■ The State argues that the *voir dire* record's silence as to the race of the jurors and the venire precludes defendant from raising his equal protection claim. Illinois courts, however, have held that such gaps are not fatal in cases tried prior to *Batson* when deciding whether a defendant can make a *prima facie* showing of discrimination; instead, the *voir dire* record may be supplemented with information from other sources such as the trial judge, the attorneys, or the venire members themselves. (*People v. Mitchell* (1991), 221 Ill. App. 3d 979, 992-93, 582 N.E.2d 1193, 1201, citing *People v. Andrews* (1989), 132 Ill. 2d 451, 548 N.E.2d 1025, and *People v. Lann* (1990), 194 Ill. App. 3d 623, 551 N.E.2d 276, *appeal denied* (1990), 132 Ill. 2d 550, 555 N.E.2d 381.) Therefore, we find that this flaw is not dispositive.

The State also contends that defendant waived his claims by not raising them on direct appeal. Although conceding that courts relax the waiver rule for factual questions not apparent from the record during direct appeal, the State contends that defendant had ample opportunity to raise these claims earlier because the court asked the members of the venire whether the defendant's race would affect their impartiality. It also chastises him for not explaining the delay. In

addition, maintains the State, it would be mere speculation to hold that not objecting to the State's conduct worked to defendant's disadvantage at trial. Therefore, the State concludes, defendant has not shown either "cause" or "prejudice" such as would take this case out of the embrace of the waiver rule.

■ Here, as noted above, the jury selection process apparently was not transcribed, so the State's use of its peremptory challenges, and defendant's objections, if any, could not have been in the record on direct appeal. Similarly, defense counsel's alleged refusal to object occurred in an off-the-record conversation between defendant and his attorney. For this very reason, the issues before the circuit court on defendant's petition could not have been raised on direct appeal, which may review only those claims that are grounded in the trial record. In addition, the circuit court's query to the venire prior to selection asked only whether they thought that defendant's race would affect their impartiality; it did not address the State's and defense counsel's subsequent conduct. Therefore, we hold that the waiver doctrine is no bar to defendant's claims. *People v. Lee* (1989), 185 Ill. App. 3d 420, 427, 541 N.E.2d 747, 751.

### III

Defendant argues that the dismissal of his equal protection claim was premature without an evidentiary hearing on his ineffective assistance claim.

■ Defendant's argument is premised on his belief that the reason the circuit court dismissed the equal protection claim was that defendant had waived it by not mentioning it on direct appeal. Because defendant did not include the State's motion to dismiss in the record, we do not know if the State urged the circuit court to adopt this view, nor do we know if the circuit court grounded its decision on this basis given that, as noted above, it gave no reasons for dismissing defendant's petition. Here again, however, even if we determined that defendant did not waive this question, defendant could not prevail on the merits.

According to the transcript from the hearing on the State's motion to dismiss the petition, the State argued that the United States Supreme Court's decision in *Allen v. Hardy* (1986), 478 U.S. 255, 92 L. Ed. 2d 199, 106 S. Ct. 2878 (*per curiam*), precluded defendant from raising an equal protection claim under *Batson* in a post-conviction proceeding. In *Allen*, the Court held that *Batson* applies retroactively in collateral proceedings such as this only if, on April 30, 1986, a defendant's case was either on direct appeal or the time to petition

for a writ of *certiorari* had not passed; otherwise, relief under *Batson* is unavailable. *Allen*, 478 U.S. at 258 & n.1, 92 L. Ed. 2d at 204 & n.1, 106 S. Ct. at 2879-80 & n.1.

Here, the Illinois Supreme Court denied defendant's petition for leave to appeal on February 4, 1986. At that time, the rules of the United States Supreme Court required that a criminal defendant file a petition for a writ of *certiorari* within 60 days of the order challenged, in this case, on or before April 6, 1986. (Sup. Ct. R. 20(.1) (1980), 445 U.S. 1006, 63 L. Ed. 2d xxxviii.) Accordingly, unless defendant filed a petition for rehearing in the Illinois Supreme Court or a petition for *certiorari* in the United States Supreme Court, facts about which the record is silent, his appeal was not "pending" for *Allen*'s purposes when *Batson* was announced. Under these circumstances, defendant cannot bring a *Batson* claim. Therefore, the circuit court properly dismissed defendant's equal protection claim without a hearing, if the basis for the claim was *Batson* or the relief sought was a *Batson* hearing.

This ruling does not end our inquiry, however, because defendant did not predicate his equal protection claim on *Batson* and did not ask for a *Batson* hearing. Indeed, he makes no mention of *Batson* in his petition, as is proper under the Code of Criminal Procedure (Ill. Rev. Stat. 1987, ch. 38, par. 122—2). Instead, he merely alleges that the State used its peremptory challenges to exclude blacks from his jury and that his attorney told him that this conduct was both lawful and a practice of the prosecutor's office. As the State suggests, defendant's claim is governed by the pre-*Batson* rule of *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824. (*People v. Andrews* (1992), 146 Ill. 2d 413, 423.) In *Swain*, the Court held that a defendant who claimed racial discrimination in the State's use of peremptory challenges was required to overcome the presumption that a prosecutor's conduct in any particular case was governed by trial-related considerations rather than intent to discriminate. (*Swain*, 380 U.S. at 220-23, 13 L. Ed. 2d at 772-74, 85 S. Ct. 835-37.) To do so, one had to demonstrate that over time, the prosecutor systematically and purposefully excluded members of a defendant's racial group from serving as jurors for reasons unconnected to the result of the case at issue. In *Swain*, the defendant did not meet his burden of proof.

Here, similarly, defendant has not met his burden of proof under *Swain*. Keeping in mind that we assume that all well-pleaded facts contained in the petition and supporting affidavit are true, we accept defendant's claim that the State exercised its peremptory challenges to exclude blacks from his jury. His trial counsel's comment that the

State did this routinely, however, cannot be viewed in the same light for the simple reason that as defendant insists elsewhere, the attorney's statement is offered only to show her state of mind, not for its truth; otherwise, it would be hearsay and therefore inadmissible. Unfortunately for defendant, his attorney's comment is also the lone indication in his petition that the prosecutor used peremptory challenges over time to deny black venire members the opportunity to serve as jurors, the proof that *Swain* requires. Although an affidavit from defendant's trial counsel would have helped defendant to establish the requisite "substantial showing" of systematic discrimination, which in turn would have warranted reversal under *Swain*, defendant elected not to submit one. Therefore, the circuit court's dismissal of the equal protection claim without a hearing was proper because defendant's petition and affidavit alone do not satisfy the statutory prerequisite of a "substantial showing" that the prosecutor's conduct was unconstitutional under the then-prevailing rule of *Swain*.

## IV

To state a claim for ineffective assistance of counsel, a convicted defendant must satisfy both prongs of the test articulated in *Strickland v. Washington* (1984), 466 U.S. 668, 687-95, 80 L. Ed. 2d 674, 693-99, 104 S. Ct. 2052, 2064-69: (1) the defendant must show that "counsel's representation fell below an objective standard of reasonableness" considering all the circumstances, including the law prevailing at the time at issue; and (2) "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

## A

Defendant argues that under *Strickland*, his counsel's performance was objectively unreasonable because even prior to *Batson*, a prosecutor could not exercise peremptory challenges with impunity. As a result, he reasons, his trial counsel's statement that "the law allowed the prosecutor to use his peremptory challenges any way he saw fit" was incorrect. The State counters that defendant's counsel was competent under *Strickland* in that, as noted above, to prevail on an equal protection claim under the rule prevailing at the time (*Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824), defendant was obliged to demonstrate that the State had excluded black venire members from juries systematically and purposefully over a period of time, proof that the petition gives no indication defendant's trial counsel could have produced at trial.

■ Trial counsel may be deemed ineffective for misunderstanding the applicable law. (*People v. Hayes* (1992), 229 Ill. App. 3d 55, 61.) Here, however, defendant's trial counsel's refusal to object to the State's conduct did not reflect a misunderstanding of the law at the time and thus her conduct did not fall below reasonable *contemporaneous* professional standards.[2] In early 1984, such an objection could have succeeded only if a defendant had been able to demonstrate purposeful discrimination on a case-by-case basis, a daunting task. Indeed, in *People v. Gaines* (1984), 105 Ill. 2d 79, 473 N.E.2d 868, a post-conviction case decided after defendant's trial occurred, the Illinois Supreme Court rejected an equal protection claim similar to defendant's, holding that under *Swain* and then-controlling Illinois case law, the defendant had not raised a constitutional issue because the defendant did not make a substantial showing of systematic exclusion.[3] (*Gaines*, 105 Ill. 2d at 88-89, 473 N.E.2d at 873.) In a case decided the same day as *Gaines*, *People v. Mack* (1984), 105 Ill. 2d 103, 473 N.E.2d 880, the court rejected a due process claim brought for exclusion of black venire members.[4] Citing an informal newspaper survey, the court commented that "there is just no evidence that blacks are systematically and purposefully excluded from serving on juries in Cook County where defendants are black." (*Mack*, 105 Ill. 2d at 122, 473 N.E.2d at 890-91.) A sixth amendment claim would have fared no better in 1984. *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202.

From these contemporaneous rulings, we learn that at the time of defendant's trial, an objection to the State's use of its peremptory challenges to discriminate against black venire members at a particular trial would have been futile. Accordingly, we cannot say that the refusal to make the objection contravened the professional standards

---

[2]We recognize, of course, that defense objections to the State's use of peremptory challenges were not novel at the time of defendant's trial. (See, *e.g., People v. Hope* (1992), 147 Ill. 2d 315, 321 (objection made at 1982 trial).) We hold only that her view of the law at the time was not unreasonable.

[3]This was the alternative holding. In *Gaines*, defense counsel raised the objection, but he did so after the court had sworn in the jury. The defendant addressed the question on his direct appeal and lost. In the post-conviction proceeding, he was not allowed to raise it a second time because the court said the earlier decision on the merits was *res judicata*.

[4]*Mack* was vacated and remanded by the United States Supreme Court following *Batson* (*Mack v. Illinois* (1987), 479 U.S. 1074, 94 L. Ed. 2d 127, 107 S. Ct. 1266), but that fact does not affect our analysis of the law in Illinois in 1984 because *Mack*, unlike this case, was on direct appeal when *Batson* was announced.

of the day. In this respect, defendant's citation to *Government of the Virgin Islands v. Forte* (3d Cir. 1989), 865 F.2d 59 (*Forte II*), which concerned a Federal trial conducted approximately two years after the trial at issue here, is not persuasive. In *Forte II*, the third circuit held that not complying with a similar request to make a similar objection was unreasonable in light of "unique circumstances": the attorney's reason for not objecting (embarrassment), prior decisions in the Federal court in that jurisdiction, and the pendency of *Batson* at the time of the trial. The third circuit held that under these circumstances, the attorney should have foreseen the *Batson* ruling and made the objection for the record. By contrast, to rule that under the circumstances here defendant's trial counsel should have known which way the wind would blow two years after the trial, despite longstanding Illinois and Federal precedent to the contrary, would be tantamount to imposing a duty of clairvoyance. (*People v. Teague* (1992), 228 Ill. App. 3d 855, 859.) We decline to do so.

## B

With regard to the other *Strickland* prong, defendant asserts that but for his trial counsel's refusal to object to the State's conduct, the objection would have appeared in the record, thereby preserving the issue for direct appeal. Had this happened, he argues, the timing here was such that the appellate court or the Illinois Supreme Court likely would have waited for the Supreme Court to decide *Batson* before ruling on his case and then remanded for a *Batson* hearing. Thus, in defendant's view, there is a reasonable probability that, but for his trial counsel's error, the outcome of his direct appeal would have been different. The State counters that defendant has not provided support for a "reasonable probability" that the trial outcome would have been different absent the alleged gaffe and that nothing in the record suggests that defendant did not receive a fair trial or that the jury was biased. Defendant replies that the State's alleged conduct is *per se* injury, citing *Powers v. Ohio* (1991), 499 U.S. 400, 411, 113 L. Ed. 2d 411, 425, 111 S. Ct. 1364, 1371 ("[R]acial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process' [citation], and places the fairness of a criminal proceeding in doubt"). In addition, he emphasizes, the question here is not whether only the *trial* would have turned out differently but for his trial counsel's inaction, but rather whether the outcome of the *direct appeal* would have been different.

Even if we held that defendant's trial counsel had contravened the prevailing professional standard, we could not grant

defendant the relief he seeks. We agree that the State wrongly focuses on the outcome of the trial alone, but we do not share defendant's "dead certain" belief that the outcome of the direct appeal would have been different but for his attorney's refusal to object and her neglecting to state the race of the venire members, excused and sitting, on the record. It is true that doing so would have preserved the issue for the appellate and supreme courts on direct review, but as demonstrated above, defendant's direct appeal would not necessarily have been pending when *Batson* was announced, which is the only circumstance under which the outcome here might have been different.

Despite defendant's protestations, it is not reasonably probable that the Illinois Appellate Court would have held this case in abeyance for six months in addition to the 18 months that already had passed between sentencing and issuance of the appellate decision, nor can we say with confidence that the Illinois Supreme Court likely would have delayed for three months its denial of defendant's petition for leave to appeal. Defendant has offered no cases whose procedural history would support this claim, so we would have to resort to speculation to rule in his favor. Unlike the court in *Forte II*, we cannot say that the proceedings here definitely would have turned out differently if defendant's counsel had made the objection because in *Forte II*, the case was pending on direct appeal when *Batson* was announced. Here, it is possible that had the issue been preserved, defendant's appellate counsel would have filed a petition for a writ of *certiorari* and thus this case would have been on direct appeal when *Batson* was announced.[5] Nevertheless, were we to rule that under the circumstances here this possibility could be deemed a "reasonable probability," we would be engaging in conjecture.

Based on the above analysis, we hold that defendant did not make the statutorily required showing in his petition and affidavit that his counsel's refusal to comply with his request to object to the State's improper use of peremptory challenges was either an act that fell below an objective standard of reasonableness, given the State of Illinois

---

[5]Ironically, when the Illinois Supreme Court denied defendant's petition for leave to appeal, the time period for filing for *certiorari* in criminal cases was only 60 days, with the possibility of a 30-day extension; had it been 90 days, as it is now, his appeal would have been pending, under *Allen*'s definition, when *Batson* was announced, even if he had not filed the petition. Compare Sup. Ct. R. 20(.1) (1980), 445 U.S. 1006, 63 L. Ed. 2d xxxviii, with Sup. Ct. R. 13(.1) (1990), 493 U.S. 1109, 107 L. Ed. 2d xciv, 110 S. Ct. 663.

and Federal law at the time of defendant's trial, nor has he satisfied his burden with regard to demonstrating a reasonable probability that but for the refusal, the outcome of his direct appeal would have been different. Accordingly, we hold that the circuit court did not abuse its discretion in dismissing the petition without an evidentiary hearing on this issue.

## V

Defendant asks this court to overrule *People v. Banks* (1987), 121 Ill. 2d 36, 520 N.E.2d 617, and to reverse and remand for appointment of counsel with no connection to the public defender's office. In the alternative, he asks for reversal and remand for a hearing as to the existence of an actual conflict of interest. The State counters that this court has no authority to overrule a decision of the Illinois Supreme Court. Because defendant made no claim of actual conflict, insists the State, nor does the record reveal any, *Banks* precludes defendant from raising the question.

In *Banks*, the court held that assigning a public defender to represent a convicted person in an ineffective assistance of counsel claim against another attorney from the same office does not present a *per se* conflict of interest. The court held that, instead, the circuit court must examine each case for circumstances that would result in an actual conflict.

Defendant has presented no argument or citation in support of his position. Absent argument and support, this court need not consider an issue. (*Holmstrom v. Kunis* (1991), 221 Ill. App. 3d 317, 325, 581 N.E.2d 877, 882, citing Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7).) Nevertheless, we note that at the hearing, the public defender said only that it was her office's policy to ask for leave to withdraw for conflict reasons; she gave no particular reason for her motion nor does the record reveal any. Thus the circuit court properly denied the motion to withdraw.

For the reasons given above, we affirm the judgment of the circuit court.

Affirmed.

HARTMAN, P.J., and McCORMICK, J., concur.