THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK A. MUNSON, Defendant-Appellant.

Third District   No. 3—93—0728

Opinion filed August 18, 1994.

Kenneth D. Brown, of State Appellate Defender's Office, of Ottawa, for appellant.

Marc Bernabei, State's Attorney, of Princeton (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE SLATER delivered the opinion of the court:

Defendant Mark A. Munson pleaded guilty to driving while his license was revoked (625 ILCS 5/6—303(d) (West 1992)), aggravated battery (720 ILCS 5/12—4(b)(6) (West 1992)) and driving under the influence of alcohol (625 ILCS 5/11—501 (West 1992)). Defendant was sentenced to concurrent terms of imprisonment of five years for driving with license revoked and aggravated battery and six months for driving under the influence. Defendant now appeals from the denial of his motion to withdraw his pleas and reduce his sentence, raising a single issue: whether a *per se* conflict of interest exists when an assistant public defender is appointed to represent a defendant at post-plea proceedings in which the defendant asserts that the assistant public defender's superior coerced his guilty plea and rendered ineffective assistance of counsel.

On March 9, 1993, the defendant was charged by indictment with one count of felony driving while license revoked and one count of aggravated battery. Thereafter the defendant appeared in court with his appointed counsel, Bureau County Public Defender David Rumley, and tendered a negotiated plea of guilty to the charges. At the outset of the hearing, the prosecutor informed the court that the parties had agreed that the defendant would plead guilty to the driving while revoked count and the aggravated battery count and would be sentenced on both counts to concurrent terms of imprisonment of five years. The prosecutor also stated that the parties had agreed that the defendant would plead guilty to a charge of driving under the influence and be sentenced to a concurrent six-month term. Defense counsel indicated that he had discussed the plea negotiations with the defendant and that the defendant agreed with the negotiations and the recommended sentence. The court then asked the defendant if he was satisfied with the agreement and was in accord with it. When the defendant answered "No" to this query, the court stated that the hearing would proceed no further and that the defendant could have a trial.

At this juncture, defense counsel asked the court for a moment to talk to the defendant. Thereafter, counsel told the court that the defendant understood the plea agreement and was willing to go forward. The court then again asked the defendant if he was satisfied with the agreement, and the defendant answered affirmatively. The court

next determined that the defendant understood the charges against him and explained the minimum and maximum sentences he faced, including the extended-term penalties he could be subject to because of his prior convictions.

Following admonishments pursuant to Supreme Court Rule 402 (134 Ill. 2d R. 402), the defendant indicated that he was satisfied with his attorney, Public Defender Rumley, and he had no complaints about his representation. The State then presented the factual basis in support of the plea. Afterwards, the defendant indicated that he had not been threatened, intimidated, or coerced in any way to enter the plea. After accepting defendant's plea, the court sentenced the defendant to concurrent terms of five years for driving while license revoked, five years for aggravated battery, and six months for driving under the influence.

On May 24, 1993, the defendant filed a *pro se* motion to withdraw his guilty plea. The motion alleged that the defendant's plea was involuntary because his attorney coerced him into taking the plea agreement, and because he was under the influence of drugs and suffering from a concussion at the time of the plea. In addition to the motion to withdraw, the defendant also filed a *pro se* motion to reduce sentence and a *pro se* motion for appointment of a bar association attorney. In support of his request for a bar association attorney, the defendant contended that he was entitled to counsel other than the public defender because he was coerced into pleading guilty by the Bureau County public defender and he was alleging the ineffectiveness of the public defender in his motions to withdraw guilty plea and to reduce sentence. On May 25, 1993, the trial court appointed Assistant Public Defender Michael Henneberry to represent the defendant with respect to his motions to withdraw guilty pleas and to reduce sentence.

On June 10, 1993, the defendant appeared in court with Henneberry, who informed the court that the defendant did not desire his services because Henneberry was in the same office as Public Defender Rumley, whom the defendant was attacking in his motions. The defendant stated that a conflict of interest existed because he was not properly represented by Rumley. The court denied the defendant's request for another attorney, stating that the public defender's office was structured in such a way as to avoid conflicts of interest. The prosecutor added that Public Defender Rumley and attorney Henneberry, who was one of two assistant public defenders, were employed part-time and each had separate, private law offices.

On July 28, 1993, the defendant filed a *pro se* motion for reconsideration of appointment of a bar association attorney, in

which he alleged that he had a right to counsel free from a conflict of interest. At a hearing on the same date, the trial court noted that the public defender's office was set up "so that the attorneys are separate and apart and are not in conflict of interest." The court denied the defendant's motion.

On September 8, 1993, a full hearing was conducted on the defendant's motions to withdraw guilty plea and reduce sentence. The defendant testified that, at the time he pleaded guilty, he was taking numerous medications, including Soma, codeine, Valium, and Halcion, for his nerves and for a concussion he had suffered. He testified that the medications affected his ability to make a knowing waiver of his rights. He also testified that, while he was under the influence of the medication, he was pressured into pleading guilty by Public Defender Rumley and his assistant, Kathy Herbolsheimer, who came to see him at the county jail the day after he was arrested and told him he would get 10 years in prison if he did not take the State's offer of five years. The defendant further testified that the medication he had been taking was prescribed by a doctor at Perry Memorial Hospital and by Dr. Foresman at the county jail. The defendant was the only witness called to testify at the hearing.

After listening to the arguments of respective counsel, but before ruling on the defendant's motion, the trial court questioned why the doctor from the county jail had not been called to testify. The court then went on to deny the defendant's motions, finding that the defendant's pleas were voluntary and the sentences were proper.

On appeal, defendant contends that the trial court's refusal to appoint independent counsel resulted in a denial of his right to effective assistance of counsel because a *per se* conflict of interest arose when Assistant Public Defender Henneberry was put in the position of challenging the effectiveness of his superior, Public Defender Rumley. Defendant maintains that the case at bar is distinguishable from *People v. Banks* (1987), 121 Ill. 2d 36, 520 N.E.2d 617, in which the supreme court held that no *per se* conflict of interest exists when an assistant public defender is assigned to challenge the effectiveness of another assistant from the same office. Here, argues defendant, the assistant public defender was required to challenge the competence of the person who "presumably, hired him, assigned his cases, evaluates his work and controls his monetary and professional advancement in the office."

We begin our analysis by examining the decisions of our supreme court in *Banks* and *People v. Spreitzer* (1988), 123 Ill. 2d 1, 525 N.E.2d 30. In *Banks*, the court overruled the *per se* rule established in *People v. Smith* (1967), 37 Ill. 2d 622, 230 N.E.2d 169, and *People v. Terry*

(1970), 46 Ill. 2d 75, 262 N.E.2d 923, and held that where an assistant public defender asserts that another assistant from the same office has rendered ineffective assistance, a case-by-case inquiry should be conducted to determine whether any circumstances peculiar to the case indicate the existence of an actual conflict of interest. The court rejected a *per se* rule because it "would require us to presume that public defenders would allow any office allegiances to interfere with their foremost obligation to their clients." *Banks*, 121 Ill. 2d at 43, 520 N.E.2d at 620.

In *Spreitzer*, a defendant charged with murder was represented by Carol Anfinson, a Du Page County assistant public defender. Prior to the start of defendant's trial, Peter Dockery, a former assistant State's Attorney who had been "very much involved" in the decision to charge the defendant, was hired as an assistant public defender and subsequently became the Du Page County public defender. Defendant claimed that both a *per se* and actual conflict of interest was created by Dockery's new position because Anfinson would be reluctant to zealously represent a defendant that her superior had helped to prosecute. The supreme court disagreed.

The *Spreitzer* court noted the lack of clarity concerning the issue of when a conflict of interest requires reversal of a conviction, and the "confusing, and sometimes inconsistent, use of such terms as '*per se* conflict,' 'potential conflict,' 'possible conflict,' 'actual conflict,' 'prejudice,' and 'actual prejudice.'" (*Spreitzer*, 123 Ill. 2d at 14, 525 N.E.2d at 34.) The court's review of the relevant case law indicated that in those cases in which a conflict of interest was characterized as *per se*, "certain facts about a defense attorney's status were held to engender, *by themselves*, a disabling conflict." (Emphasis in original.) (*Spreitzer*, 123 Ill. 2d at 14, 525 N.E.2d at 34.) In cases of *per se* conflicts, defense counsel had some tie to a person or entity—either a client, employer or counsel's own previous commitments—which would benefit from an unfavorable verdict for the defendant. Defense counsel's knowledge that a favorable result would conflict with the interests of his client, employer or self could subliminally affect counsel's performance in ways difficult to detect and demonstrate. In addition, a *per se* conflict created the possibility that an attorney would be unnecessarily subjected to later charges that his representation was not completely faithful. For these reasons, when a *per se* conflict exists, a defendant need not show "prejudice" or "actual prejudice" to secure a reversal of his conviction unless he has knowingly waived his right to conflict-free counsel. *Spreitzer*, 123 Ill. 2d at 14-17, 525 N.E.2d at 34-36.

The *Spreitzer* court went on to describe a second class of conflict

of interest cases which did not rise to the level of *per se* conflicts. Such cases have generally, but not exclusively, involved joint or multiple representation of codefendants. The method used to analyze these types of cases depends upon whether the trial court was apprised of the possible or potential conflict. Where a potential conflict has been brought to the court's attention at an early stage, the court has a duty to either appoint separate counsel or take adequate steps to determine whether the risk of conflict is so remote that separate counsel is unwarranted. Unless such steps are taken, a defendant may obtain reversal of his conviction without demonstrating "specific prejudice." (*Spreitzer*, 123 Ill. 2d at 17-18, 525 N.E.2d at 36.) Where, however, the trial court is not made aware of a potential conflict, a defendant's conviction will be reversed only upon a showing that an actual conflict of interest adversely affected counsel's performance. *Spreitzer*, 123 Ill. 2d at 18, 525 N.E.2d at 36.

Mindful of the rule announced in *Banks*, and applying the analysis outlined in *Spreitzer*, we do not believe that a *per se* conflict of interest arises every time an assistant public defender is assigned to represent a defendant who claims that the public defender was incompetent. In rejecting a *per se* rule in *Spreitzer*, the court stated:

> "Unlike the conflicts posed in our other *per se* cases, the asserted disjunction between Anfinson's duty to her client and her supposedly conflicting loyalty to Dockery is extremely speculative and remote. We are asked to believe that Anfinson would refrain from zealously representing her client because such representation might embarrass Dockery in some way. But Dockery's tie to the prosecution, a tie which was itself fairly tenuous, would be counterbalanced by his present status as the public defender. Presumably he was more interested in winning cases currently assigned to his office than in protecting the integrity of the decisions he had made when he was a prosecutor." *Spreitzer*, 123 Ill. 2d at 22, 525 N.E.2d at 38.

Admittedly, the potential conflict of interest in this case is less "speculative and remote" than that in *Spreitzer*. A successful challenge by Henneberry to Rumley's representation could prove embarrassing to both the office of the public defender and to Rumley personally. This, however, is the same potential conflict that was identified in *Banks* when one assistant public defender asserted the incompetence of a fellow defender. The *Banks* court held that this was insufficient to invoke a *per se* rule.

●1 Unlike *Banks*, however, in this case there is the additional factor of Rumley's position as Henneberry's supervisor. Obviously, a subordinate might be reluctant to risk embarrassing his superior for

fear of retaliation, whether overt or subconscious. We believe that the magnitude of such a potential conflict depends largely upon the level of control and supervision exercised by the public defender over the subordinate. The greater the degree to which the superior "evaluates [the subordinate's] work and controls his monetary and professional advancement in the office," the greater the risk that the subordinate's performance will be affected by self-interest. However, it is precisely because the magnitude of such a potential conflict varies according to the relationship between the supervisor and the subordinate that we believe a *per se* rule is inappropriate in such cases. The size, structure and organization of the offices of the public defenders vary widely and substantially throughout the State, "rang[ing] from the Cook County public defender's office, with nearly 300 full-time attorneys, to many smaller offices employing only a few full- and part-time lawyers." (*People v. Robinson* (1979), 79 Ill. 2d 147, 158, 402 N.E.2d 157, 162.) Indeed, "in at least one county the 'office' of public defender exists in title only, with the individual attorneys being but nominally members of the same office." (*Robinson*, 79 Ill. 2d at 155, 402 N.E.2d at 160.) Given the diversity of organization of the public defenders' offices, we believe a case-by-case approach to potential conflicts between supervisors and subordinates is more rational than the blanket prohibition of a *per se* rule. Accordingly, we hold that no *per se* conflict of interest arose in this case.

●2 Notwithstanding the lack of a *per se* conflict, when a potential conflict is brought to the trial court's attention at an early stage, "a duty devolves upon the trial court to either appoint separate counsel or to take adequate steps to ascertain whether the risk of conflict was too remote to warrant separate counsel." (*Spreitzer*, 123 Ill. 2d at 18, 525 N.E.2d at 36.) Our review of the record indicates that the trial court specifically found that the public defender's office was structured in such a manner that no conflict of interest existed in this case. We find no error. We note parenthetically that defendant has not alleged, and the record does not disclose, any specific defect in counsel's strategy, tactics or decision-making attributable to any actual conflict of interest.

Finally, we find that this case is distinguishable from *People v. Cano* (1991), 220 Ill. App. 3d 725, 581 N.E.2d 236, which defendant relies on to support his position. In *Cano*, the defendant filed a complaint with the Attorney's Registration and Disciplinary Commission against his trial attorney, Assistant Public Defender Pavletic, alleging incompetence. Defendant also filed a *pro se* post-trial motion alleging that Pavletic was ineffective. Pavletic's supervisor, Carmody, was appointed to represent defendant on his ineffective assistance

claim. At the hearing on the motion, Carmody asked the court not to place him in a position of arguing against his subordinate, and the motion was subsequently withdrawn with defendant's consent. The appellate court remanded for a new hearing, finding that a *per se* conflict existed as "Carmody's interest in protecting the professional reputation of his subordinate conflicted with defendant's interest in advancing his claim of ineffective assistance." *Cano*, 220 Ill. App. 3d at 731, 581 N.E.2d at 241.

Unlike *Cano*, in this case the attorney assigned to represent the defendant on his ineffective assistance claim did not indicate any reluctance, nor was the ineffectiveness charge withdrawn. In addition, although the *Cano* court stated that a *per se* conflict of interest existed, its decision appears to have been based on a finding of an *actual* conflict of interest. We agree with the assessment of the court in *People v. Levesque* (1993), 256 Ill. App. 3d 639, 649, 628 N.E.2d 272, 279, that "the holding of *Cano* is worded too broadly," and we reiterate our belief that a case-by-case analysis is appropriate in cases such as this. See *Banks*, 121 Ill. 2d 36, 520 N.E.2d 617; see also *People v. Larry* (1990), 196 Ill. App. 3d 231, 553 N.E.2d 431 (representation of codefendants by assistant public defender and his superior did not constitute *per se* conflict of interest despite both attorneys' admissions that situation created tension and discomfort within office).

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

BARRY and LYTTON, JJ., concur.