# Illinois Official Reports

## Appellate Court

---

### *People v. Ackerman*, 2014 IL App (3d) 120585

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NEIL ACKERMAN, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0585 |
| Filed | May 12, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for solicitation of murder for hire, defendant's postconviction petition alleging that his appellate counsel failed to argue that defendant's trial counsel, a public defender, worked under a conflict of interest because his supervisor had previously worked in the prosecutor's office was properly dismissed as frivolous and patently without merit, since the trial court inquired about the alleged conflict when the issue was raised after the trial had started and determined that no conflict existed, and on remand defendant will be given two additional days of credit for his presentence incarceration, a $50 credit against his court systems fine, and a reduction of his Violent Crime Victims Assistance Fund fine. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 09-CF-334; the Hon. Daniel J. Rozak, Judge, presiding. |
| Judgment | Affirmed as modified; remanded with directions. |

| Counsel on Appeal | Bryon Kohut (argued), of State Appellate Defender's Office, of Ottawa, for appellant. |
|---|---|
| | James Glasgow, State's Attorney, of Joliet (Robert M. Hansen (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion. Justice Holdridge specially concurred, with opinion. Justice Wright concurred in part and dissented in part, with opinion. |
|---|---|

## OPINION

¶ 1    The defendant, Neil Ackerman, was convicted of solicitation of murder for hire (720 ILCS 5/8-1.2(a) (West 2008)) and was sentenced to 30 years of imprisonment. On appeal, the defendant argues that: (1) the circuit court erred when it dismissed his postconviction petition as frivolous and patently without merit; (2) he is entitled to two additional days of sentencing credit for presentence incarceration; and (3) he is entitled to a $5-per-day credit toward his court systems fee and to a reduction in his Violent Crime Victims Assistance (VCVA) Fund fine. We affirm as modified and remand with directions.

¶ 2                                    FACTS
¶ 3    On February 11, 2009, the defendant was charged by complaint with solicitation of murder for hire (720 ILCS 5/8-1.2(a) (West 2008)). The complaint alleged that the defendant solicited Milton Bass to murder Deanna Musilek in exchange for money. The complaint was superseded by an indictment one week later.

¶ 4    The case went to trial in October 2009. During the trial, the State presented evidence that the defendant was incarcerated in Will County in early 2009 when he solicited his cellmate, Bass, to murder Musilek in exchange for money. Bass relayed this information to authorities, and eventually authorization was obtained to record Bass's conversations with the defendant. While wearing a wire, Bass had a conversation with the defendant regarding the murder-for-hire scheme.

¶ 5    On the second day of trial, after five witnesses had testified, the parties informed the circuit court of two matters. First, the parties told the court that defense counsel had previously represented Bass in a domestic battery case in which Bass had pled guilty. The defendant told the court that he did not have a problem with defense counsel's prior representation of Bass.

¶ 6    Second, defense counsel informed the court that his supervisor, Greg DeBord, worked on this case when DeBord was working in the prosecutor's office. Defense counsel told the court that he did not consult with DeBord on this case, however. The court asked the defendant if he

was willing to proceed with defense counsel's representation, and the following discussion took place:

> "[THE DEFENDANT]: Yeah. I mean [*sic*] trust [defense counsel] and I trust [co-counsel for the defense] here. But it's just that what can I do–get a whole different attorney from a different Public Defender's Office? I mean he works, the guy that was with the State's Attorney now works with the Public Defender's Office is nothing, you know, can't get a Public Defender from a different county or something to jump in and help me.
>
> [DEFENSE COUNSEL]: I advised [the defendant] there is something that could be done and it would be up to the Court, that he doesn't have to–he could object to the [*sic*] if he would like; that he is not forced to go to trial or he is not forced to, you know, acquiesce with the fact that Mr. DeBord was involved in this case. So it is up to him what he wants to do.
>
> [THE PROSECUTOR]: Just so the record is clear, the fact Mr. DeBord is over in their office has nothing to do with this case.
>
> [Defense counsel] was going to consult with him regarding an issue the defendant wanted to raise.
>
> [THE COURT]: That was the Motion to Suppress?
>
> [DEFENSE COUNSEL]: No. You know what, that was true, but I didn't consult with him. But I think he had something to do with the overhear.
>
> [THE PROSECUTOR]: I'm not saying that.
>
> [DEFENSE COUNSEL]: That was an issue I wanted to make sure was clear. I did not consult with him at all.
>
> I had the intent and [the prosecutor] was like remember he was, I said, oh yeah, you're right. I think the bigger issue that I had as his attorney, I had a duty to let him know that his case in particular I found out that Mr. DeBord did have something to do with it, I guess, authorizing the overhear, if I'm not mistaken."

¶ 7 After it was discussed that DeBord could have been the one who signed off on the overhear, the prosecutor told the court that he did not see any problem with defense counsel continuing the representation given that no consultation took place between DeBord and defense counsel. After defense counsel agreed, the court again asked the defendant if he understood the situation. The defendant stated, "What are my choices? I'm not saying I want to change lawyers, but being technically in my eyes the enemy is now working with my lawyer, you know." The court responded with further discussion and inquiry regarding defense counsel's prior representation of Bass, as the court saw that issue as potentially being more problematic. When the court asked the defendant how he felt about it, the defendant stated, "I'm satisfied with my attorneys. I'm just a little worried about, not the fact that he represented Milton Bass in the past but a supervisor was in on this case from the beginning, you know. I just found out really about ten minutes ago."

¶ 8 Next, the following discussion took place:

"[THE PROSECUTOR]: Judge, there is a series of cases that Mr. DeBord had and was in charge of and was part of in terms of being in our office and Public Defender's office, he's separating himself from and has had no discussions about that, no influence on this case.

[DEFENSE COUNSEL]: That's correct.

[THE COURT]: And just one more time. You have not consulted with Mr. DeBord on this case?

[DEFENSE COUNSEL]: I have not.

[THE COURT]: [Co-counsel for the defense], have you?

[CO-COUNSEL FOR THE DEFENSE]: No, Judge.

[DEFENSE COUNSEL]: We have direct orders [*sic*] certain cases where, you know, that were filed, you know, while he was there, and then, you know, certain cases filed after he was there we can only consult with him on the cases that were after Mr. DeBord came over to our office.

[THE COURT]: That's the policy of your office?

[DEFENSE COUNSEL]: Yes.

[THE COURT]: So anything existing at the time Mr. DeBord went to the Public Defender's Office is off limits to him?

[DEFENSE COUNSEL]: That is correct.

[THE COURT]: And that's the Public Defender himself [*sic*] policy.

[DEFENSE COUNSEL]: That's correct. In regards to this case it kind of slipped my mind, I was going to ask him about a–it might not have been so specific, but kind of generally, and then [the prosecutor] was like, oh, wait a minute, make sure you don't do that, and I'm glad he did that. That's why I was thinking about doing that and then I heard–when looking through discovery I think Mr. DeBord had something to do with this case.

[THE COURT]: Okay.

[DEFENSE COUNSEL]: So I wanted to make sure that was on the record just in case the defendant found out later. Just want to be up front, your Honor.

[THE COURT]: As well you should be.

Anything else, [defendant]?

[THE DEFENDANT]: No, sir. Thank you.

[THE COURT]: You're fully informed; you are satisfied with [defense counsel] and [co-counsel for the defense]?

[THE DEFENDANT]: Yes, sir.

[THE COURT]: You want to proceed; is that correct?

[THE DEFENDANT]: Yes, sir."

Thus, the trial continued without any change in counsel.

¶ 9 After the trial, the jury returned a guilty verdict. The defendant was later sentenced to 30 years of imprisonment. The court's sentencing order gave the defendant credit for presentence incarceration from February 13, 2009, to December 17, 2009. The defendant was also assessed numerous monetary charges, including a $200 deoxyribonucleic acid (DNA) fee, a $50 court systems fee, and a $25 VCVA Fund fine. On direct appeal, this court vacated the defendant's $200 DNA fee because his DNA was already on file in the DNA database from a previous case, but otherwise affirmed the defendant's conviction and sentence. *People v. Ackerman*, 2011 IL App (3d) 091057-U, ¶ 29.

¶ 10 On May 14, 2012, the defendant filed a *pro se* postconviction petition in which he alleged ineffective assistance of appellate counsel. In his petition, the defendant alleged, *inter alia*, that appellate counsel failed to argue that defense counsel labored under a conflict of interest because defense counsel's supervisor, Greg DeBord, had previously worked in the prosecutor's office. The petition alleged that DeBord was involved in obtaining the authorization to record Bass's conversations with the defendant.

¶ 11 On June 8, 2012, the circuit court issued a written order in which it dismissed the defendant's petition as frivolous and patently without merit. The defendant appealed.

¶ 12                                                      ANALYSIS

¶ 13 On appeal, the defendant argues that: (1) the circuit court erred when it dismissed his postconviction petition as frivolous and patently without merit; (2) he is entitled to two additional days of sentencing credit for presentence incarceration; and (3) he is entitled to a $5-per-day credit toward his court systems fee and to a reduction in his VCVA Fund fine.

¶ 14 First, the defendant argues that the circuit court erred when it dismissed his postconviction petition as frivolous and patently without merit.

¶ 15 At the first stage of postconviction proceedings, the circuit court must independently review the petition to assess its substantive merit. 725 ILCS 5/122-2.1 (West 2010). If the court determines that the petition is frivolous or patently without merit, the court must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2010). A petition is frivolous or patently without merit if it has no arguable basis in either law or fact. *People v. Tate*, 2012 IL 112214, ¶ 9.

¶ 16 To establish ineffective assistance of appellate counsel, a defendant must establish that: (1) appellate counsel's failure to raise an issue was objectively unreasonable; and (2) had appellate counsel raised the issue, it is reasonably probable that the defendant's conviction or sentence would have been reversed. *People v. Ward*, 187 Ill. 2d 249, 258 (1999). "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *People v. Easley*, 192 Ill. 2d 307, 329 (2000). A defendant is not prejudiced by appellate counsel's decision to forego raising an issue if the underlying issue lacks merit. *People v. Stephens*, 2012 IL App (1st) 110296, ¶ 109.

¶ 17 The sixth amendment right to effective assistance of counsel includes the right to conflict-free counsel. *People v. Taylor*, 237 Ill. 2d 356, 374 (2010). In determining whether

defense counsel labored under a conflict of interest, the initial step is to determine whether a *per se* conflict existed. *Id.* Here, the defendant does not argue that a *per se* conflict existed.

¶ 18      Next, we look to when the potential conflict was raised. See *People v. Spreitzer*, 123 Ill. 2d 1, 17-18 (1988). "If counsel brings the potential conflict to the attention of the trial court at an early stage, a duty devolves upon the trial court to either appoint separate counsel or to take adequate steps to ascertain whether the risk of conflict was too remote to warrant separate counsel." *Id.* at 18. In this case, while defense counsel did notify the court of the potential conflict, he did not do so until the second day of trial, which was after five witnesses had already testified. Thus, defense counsel did not raise the matter at an "early stage." See, *e.g.*, *People v. Clark*, 374 Ill. App. 3d 50, 65 (2007) (ruling that the circuit court was not obligated to conduct an inquiry into the potential conflict when it was not brought to the court's attention before trial).

¶ 19      Even though it had no duty to inquire into the potential conflict, the circuit court did so in this case and found that no conflict existed. Here, the court conducted a detailed inquiry into defense counsel's potential conflict and determined that defense counsel had not consulted with DeBord and that the public defender's office was structured in such a way that DeBord was insulated from all cases that existed at the time he was with the prosecutor's office. Under these circumstances, we hold that no conflict existed. See *People v. Munson*, 265 Ill. App. 3d 765, 770-71 (1994) (discussing potential conflicts in the context of an assistant public defender and his supervisor and noting the impact the office's structure can have on the determination of whether a conflict actually existed).

¶ 20      While it is true that the defendant's burden of presenting a gist of a constitutional claim in this regard is low (*People v. Hardin*, 217 Ill. 2d 289, 303 (2005)), we hold that the record defeats the defendant's claim. Accordingly, because the underlying issue is without merit, appellate counsel was not ineffective for failing to raise the potential conflict issue on direct appeal, and the circuit court did not err when it dismissed the defendant's postconviction petition as frivolous and patently without merit.

¶ 21      Second, the defendant argues that he is entitled to two additional days of credit for presentence incarceration. The State concedes that the defendant is entitled to this credit.

¶ 22      In relevant part, section 5-8-7(b) of the Unified Code of Corrections provides that a defendant is entitled to credit for time spent in presentence custody. 730 ILCS 5/5-8-7(b) (West 2008). A defendant who is in simultaneous presentence custody on unrelated charges is entitled to receive sentencing credit under section 5-8-7 on both offenses. *People v. Robinson*, 172 Ill. 2d 452, 463 (1996). Credit for the second offense is calculated from the date on which it was charged. *People v. Chamberlain*, 354 Ill. App. 3d 1070, 1075 (2005).

¶ 23      In this case, the defendant was charged with the instant offense on February 11, 2009. However, the circuit court gave the defendant credit only from February 13, 2009. We hold that the defendant is entitled to two additional days of presentence credit, and we order the circuit court clerk to enter a modified mittimus to reflect that credit. See Ill. S. Ct. R. 615(b); *People v. Rivera*, 378 Ill. App. 3d 896, 900-01 (2008).

¶ 24 Third, the defendant argues that he is entitled to a $5-per-day credit toward his $50 court systems fee and to a reduction of his VCVA Fund fine. The State concedes the defendant is entitled to this relief.

¶ 25 Initially, we note that the defendant raises this issue for the first time on appeal. However, a question of whether the defendant's sentence conformed to a statutory requirement is an allegation that the sentence is void. See *People v. Millsap*, 2012 IL App (4th) 110668, ¶ 26. "It is a well-settled principle of law that a void order may be attacked at any time or in any court, either directly or collaterally." *People v. Thompson*, 209 Ill. 2d 19, 25 (2004). Moreover, "courts have an independent duty to vacate void orders and may *sua sponte* declare an order void." *Thompson*, 209 Ill. 2d at 27; see also *People v. Dickey*, 2011 IL App (3d) 100397, ¶ 31.

¶ 26 Questions regarding the appropriateness of fines, fees, and costs imposed by a sentencing court are reviewed *de novo*. *People v. Elcock*, 396 Ill. App. 3d 524, 538 (2009).

¶ 27 Section 110-14(a) of the Code of Criminal Procedure of 1963 provides:

"Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110-14(a) (West 2008).

¶ 28 In this case, the defendant contends that his $50 court systems fee, which is authorized by section 5-1101 of the Counties Code (55 ILCS 5/5-1101 (West 2008)), is actually a fine. In support of his argument, the defendant cites to *People v. Graves*, 235 Ill. 2d 244 (2009). In *Graves*, a defendant was convicted of possession of a stolen motor vehicle and was sentenced to nine years of imprisonment. *Id.* at 247. The circuit court also ordered the defendant to pay various monetary charges, including a "$10 mental health court fee" and a "$5 youth diversion/peer court fee." *Id.* at 248. The mental health court fee was assessed pursuant to section 5-1101(d-5), which provides that the fee is "placed in the county general fund and used to finance the county mental health court, the county drug court, or both." 55 ILCS 5/5-1101(d-5) (West 2008). The youth diversion/peer court fee was assessed pursuant to section 5-1101(e), which provides that the fee "must be deposited into an account specifically for the operation and administration of a teen court, peer court, peer jury, youth court, or other youth diversion program." 55 ILCS 5/5-1101(e) (West 2008). Further, section 5-1101(e) provides that the clerk must remit the fees collected on a monthly basis to those courts or program, less 5%, which was to be retained by the clerk as fee income to the clerk's office. 55 ILCS 5/5-1101(e) (West 2008).

¶ 29 The *Graves* court then emphasized the critical difference between a fee and a fine, which was that a fee is intended to compensate the state for any costs it incurred in prosecuting the defendant. *Graves*, 235 Ill. 2d at 250. The *Graves* court found that the mental health court and youth diversion/peer court fees charged in that case were actually fines because they "do not seek to compensate the state for any costs incurred as the result of prosecuting the defendant." *Id.* at 251. In its discussion of section 5-1101, the *Graves* court also stated the following:

- 7 -

"We find that section 5-1101 of the Counties Code also sets forth 'fines and penalties,' although they are labeled 'fees to finance court system.' 55 ILCS 5/5-1101 (West 2006). In addition to the two subsections under which fines were imposed in this case, section 5-1101 also authorizes monetary penalties to be paid by a defendant on a judgment of guilty or a grant of supervision for violation of certain sections of the Illinois Vehicle Code or of the Unified Code of Corrections. See 55 ILCS 5/5-1101(a), (c), (d) (West 2006)." *Graves*, 235 Ill. 2d at 253.

¶ 30 In this case, the defendant's $50 court systems fee was assessed pursuant to section 5-1101(c)(1) and was to be deposited into the county's general fund that is used to finance the county's court system. 55 ILCS 5/5-1101(c)(1), (g) (West 2008). Pursuant to the supreme court's statement in *Graves*, we hold that the court systems fee assessed in this case was actually a fine. *Graves*, 235 Ill. 2d at 253; see also *People v. Smith*, 2013 IL App (2d) 120691, ¶ 21 (holding that assessments under section 5-1101(c) are fines); *People v. Wynn*, 2013 IL App (2d) 120575, ¶ 17 (same).

¶ 31 Our holding that the defendant's $50 court systems fee was actually a fine has two consequences. First, the defendant is entitled to a $50 credit against that fine due to the time he spent in presentence incarceration. 725 ILCS 5/110-14(a) (West 2010). Second, the defendant's VCVA Fund fine must be amended. The defendant was assessed a $25 fine pursuant to section 10(c)(1), which applies only when no other fine has been imposed. 725 ILCS 240/10(c)(1) (West 2010). Because a fine was in fact imposed in this case, the defendant's fee should have been assessed under section 10(b), which authorizes a fine of "$4 for each $40, or fraction thereof, of fine imposed." 725 ILCS 240/10(b) (West 2010). Given that the defendant was assessed $50 in fines, we vacate the defendant's $25 VCVA Fund fine and impose an $8 VCVA Fund fine.[1] See Ill. S. Ct. R. 615(b); *People v. Martino*, 2012 IL App (2d) 101244, ¶ 56.

¶ 32                                             CONCLUSION

¶ 33 For the foregoing reasons, we affirm the judgment of the circuit court of Will County that dismissed the defendant's postconviction petition as frivolous and patently without merit. We also hold that the defendant is entitled to two additional days of credit for presentence incarceration, to a $50 credit against his court systems fine, and to a reduction of his VCVA Fund fine to $8. We remand the case for the entry of an order to ensure the defendant receives these credits.

¶ 34 Affirmed as modified; remanded with directions.

---

[1]Because a VCVA Fund fine is not subject to the provisions of section 110-14 (see 725 ILCS 240/10(c) (West 2010)), the defendant is not entitled to a credit against this $8 fine.

¶ 35       JUSTICE HOLDRIDGE, specially concurring.

¶ 36       I agree with the finding that the defendant did not receive ineffective assistance of counsel with respect to potential conflict of interest of trial counsel. I, therefore, concur in the judgment which affirmed the dismissal of his *pro se* postconviction petition for failure to state the gist of a meritorious claim.

¶ 37       As the State concedes the trial court's order erroneously credited the defendant with 310 days of presentence credit rather than 312 days, based upon this concession, I simply would modify the trial court's order to reflect the proper amount of presentence credit.

¶ 38       Further, as the State also concedes the defendant is entitled to a $5-per-day credit toward his $50 court system fee and to the reduction of his VCVA Fund fine from $25 to $8, I again would simply grant the defendant's requested relief on the State's concession alone.

¶ 39       For these reasons, I concur only in the judgment of the court.


¶ 40       JUSTICE WRIGHT, specially concurring in part and dissenting in part.

¶ 41       Like the majority, I conclude that the judge's written order should have allowed 312 days of credit for time served, rather than 310 days. I agree this error is easily corrected by a ministerial act of this court without the necessity of remand. *People v. Caballero*, 228 Ill. 2d 79, 88 (2008). I also agree with the majority's conclusion that defendant did not receive ineffective assistance of counsel with respect to a potential conflict of interest of trial counsel. Thus, I concur this contention contained in the *pro se* postconviction petition did not state the gist of a constitutional claim.

¶ 42       However, the *pro se* postconviction petition also alleges that the failure to raise the $5-per-day issue on direct appeal similarly resulted from the ineffective assistance of appellate counsel. Under these circumstances, I respectfully conclude the *pro se* postconviction petition sufficiently states the gist of a constitutional claim based on the *ineffective assistance* of appellate counsel, who failed to attack the sentence on the basis of voidness. See *People v. Armstrong*, 329 Ill. App. 3d 150, 152-53 (2002). Therefore, I respectfully dissent from that portion of the majority's decision that affirms the summary dismissal of the *pro se* postconviction petition.

¶ 43       Unlike the majority, I do not believe this court should remedy appellate counsel's ineffective assistance on direct appeal by correcting the sentencing error that existed, but was not challenged, at the time of the direct appeal, due to purported ineffective assistance of appellate counsel as claimed in defendant's handwritten notations in his *pro se* postconviction petition. Since defendant's *pro se* postconviction petition does not challenge the amount of the $25 VCVA fine in his postconviction petition or make any contention alleging a constitutional issue exists because the sentencing order is *void* (due to the amount of the VCVA fine), I respectfully, but stubbornly, point out this court is without authority to reduce the VCVA fine in this case.

¶ 44       I submit the reduction of the VCVA fine to $8 in this case requires our resolution of the conflicting approaches other districts of our appellate court have adopted when considering whether the court systems fee operates as a fine or fee. In this case, defendant does not seek a

statutory credit to reduce the VCVA fine to $8 which could be viewed as a simple ministerial act by this court.

¶ 45    Here, on direct appeal the VCVA fine could have been, but was not, challenged by appellate counsel. See *Hudson v. City of Chicago*, 228 Ill. 2d 462, 485 (2008). Our task in this appeal is not to correct these sentencing errors that were missed on direct appeal but, rather, to consider whether the trial court properly summarily dismissed this *pro se* postconviction petition on the grounds set forth in the *pro se* postconviction petition. I am confident that a remand for further postconviction proceedings will allow the trial court to cure these errors, and potentially other sentencing errors, postconviction counsel may choose to raise on remand.

¶ 46    I acknowledge this court, on direct appeal, vacated an improper DNA analysis fee without remand. However, the DNA analysis fee in this case was set forth in a written order signed by the judge. Unlike the DNA fee vacated by this court, the VCVA fine at issue in this appeal was not incorporated into a written court order. Here, a careful review of the record shows the trial judge ordered defendant to pay a $200 DNA analysis fee and, in a separate order, ordered defendant to pay "the costs of prosecution." Neither order mentions any fines at all.

¶ 47    Absent a court order imposing a specific fine, it is well established that the clerk of a court, as a nonjudicial member of the court, has no power to levy either fine at issue in this appeal. See *People v. Williams*, 2013 IL App (4th) 120313, ¶ 16; see also *People v. Rexroad*, 2013 IL App (4th) 110981, ¶¶ 52-53. Moreover, there is nothing in the record that convinces me the trial court reviewed, approved, or intended to incorporate the clerk's calculations into the sentencing order.[2]

¶ 48    I agree the majority's approach to reduce the VCVA fine is efficient and ensures the error is immediately corrected. However, in a postconviction context, the *trial court* should be assigned the task of correcting its own errors when they are brought to the trial court's attention in a *pro se* postconviction petition stating the gist of a constitutional claim. This court's previous willingness to correct these errors, without remand, has not diminished the number or frequency of such sentencing errors with respect to fees and fines in the trial courts.

¶ 49    I speak from personal experience when recognizing it is difficult for any judge with a heavy criminal case load to quickly navigate through the complex sentencing statutes, from the bench, during a contested sentencing hearing. Understandably, a judge may delegate the task of compiling mandatory fines and costs to the court staff. However, unless the judge carefully reviews and later adopts a nonjudicial person's calculations, the practice of delegation without sufficient judicial oversight is a process ripe with opportunities for unintentional error and void sentences. Recognizing whether a fee, such as the court systems fee, operates as a fine (with a

---

[2]A judge may properly order a VCVA fine in the amount of $25 when the conviction results from a crime of violence. 725 ILCS 240/10(c)(1) (West 2008). Yet, this defendant's conviction is not defined as a "crime of violence" pursuant to section 2(c) of the Crime Victims Compensation Act. 740 ILCS 45/2(c) (West 2008). According to statute, defendant's conviction required the trial judge to order defendant to pay a mandatory $20 VCVA fine in the absence of other fines. There is nothing in this record to suggest the court approved the clerk's calculations or intended to order a VCVA fine of $25.

corresponding statutory impact on the amount of a VCVA fine) is worthy of its own complicated computer software program but depends entirely on the accuracy of the data entered by a nonjudical staff member.

¶ 50    These small, separate, mandatory penalties may be viewed by some to represent an insignificant component of the sentencing process. However, these mandated monetary assessments collectively grow into much larger funds when distributed by the circuit clerk according to statute. The statutorily created funds benefit worthy agencies without financially burdening law-abiding taxpayers to fund those services.

¶ 51    When in doubt during a sentencing hearing, a trial judge might consider requesting the prosecuting attorney to advise the court of all mandatory monetary penalties to be imposed. I submit the State's Attorney, rather than a court clerk, should bear the burden of ensuring the sentencing statutes are strictly and uniformly enforced. In the alternative, the court could set one additional status date after sentencing for the parties to review the clerk's assessment of fees and fines before the court incorporates those monetary consequences into a written order.

¶ 52    Based on this record, I decline the joint invitation of the parties, created by the State's concession of error, to reduce the amount of the VCVA fine at this time. At the risk of making much ado about nothing, I conclude *all* sentencing issues, allegedly neglected on direct appeal by appellate counsel, should be addressed, and then corrected, by the trial court following a remand from this court for further postconviction proceedings.